## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**EARLINE J. PARKER**                                          **CIVIL ACTION**

**VERSUS**                                                            **NO: 24-728**

**LOUISIANA DEPARTMENT**
**OF HEALTH**                                                      **SECTION: "H"**

## ORDER AND REASONS

Before the Court is Plaintiff's Motion for Preliminary Injunction (Doc. 7). Oral argument was held on April 30, 2024. For the following reasons, Plaintiff's Motion for Preliminary Injunction is **GRANTED**.

## BACKGROUND

Plaintiff Earline J. Parker brings this lawsuit against Defendant Ralph L. Abraham, M.D., in his official capacity as Secretary of the Louisiana Department of Health ("LDH"), which is the agency designated by the State of Louisiana to administer the federal Medicaid program for the State.[1] Plaintiff challenges the LDH's "illegal termination of Medicaid assistance" under the Medicaid Act through 42 U.S.C. § 1983.[2] Plaintiff seeks reversal of the LDH's decision to terminate her Medicaid, a permanent injunction against the LDH

---

[1] Doc. 1 at 2.
[2] 42 U.S.C. § 1396 *et seq.*

1

from violating the federal Medicaid statutes and regulations, a declaratory judgment that the LDH's Medication Eligibility policy § H-2020 is invalid, and an award of attorney's fees and costs.[3]

Plaintiff alleges the following facts. Plaintiff is a 71-year-old widow who has sole legal custody of her six-year-old granddaughter, M.H. M.H. resides with Plaintiff. In August of 2023, Plaintiff's monthly income was $2,119.52, which consists of $190.52 from a retirement pension, $1,479 in Social Security benefits, and $450 from the Kinship Care Subsidy Program through the Louisiana Department of Children and Family Services "to help support her six year old [sic] granddaughter, M.H."[4] At that time, Plaintiff also received Medicaid through the Medicare Savings Program known as Qualified Individuals, which paid for her Medicare Part B premium. M.H. receives Medicaid through a different program.

On September 1, 2023, the LDH determined that Plaintiff's income exceeded the threshold for continued assistance as a Qualified Individual. This determination was based on the LDH's finding that Plaintiff lived in a one-person household. The LDH closed Plaintiff's Medicaid coverage. Plaintiff appealed the determination, and her Medicaid was continued while her appeal was pending. Her appeal was denied, and beginning in April of 2024, the LDH stopped paying Plaintiff's Medicare Part B premiums.[5] Now before the Court is Plaintiff's Motion for Preliminary Injunction. Defendant opposes.[6]

---

[3] Doc. 1.

[4] *Id.* at 5. Plaintiff now receives $1,527 per month in Social Security benefits. *Id.* On April 22, 2024, Plaintiff filed a supplemental declaration, stating that "Medicaid stopped paying for [her] Medicare Part B premiums of $174.70 per month, so Social Security reduces [her] retirement check to pay for the premiums." Doc. 18-1 at 1. Plaintiff now receives a net amount of $1,352 per month in Social Security benefits. Doc. 18-1 at 2. Additionally, Plaintiff has now lost her Kinship Care Subsidy. *See* Doc. 18-2.

[5] Doc. 7-1 at 6; Doc. 18-1 at 1.

[6] Doc. 15.

## **LEGAL STANDARD**

An applicant for preliminary injunctive relief must show: "(1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest."[7] A preliminary injunction is an extraordinary remedy.[8] Accordingly, a preliminary injunction should only be granted when the party seeking it has clearly carried the burden of persuasion on all four requirements.[9] In the end, a preliminary injunction is treated as an exception rather than the rule.[10]

## **LAW AND ANALYSIS**

Because a preliminary injunction may issue only if Plaintiff has clearly carried the burden on all four requirements, the Court considers each in turn.

### 1. *Substantial Likelihood of Prevailing on the Merits*

At the outset, Plaintiff argues that the "likelihood of success factor is treated with 'leniency' in order to 'serve the primary purpose of preventing irreparable harm.'"[11] In considering the case cited by Plaintiff to support this proposition, however, the Court notes that the Fifth Circuit only sanctioned "leniency in the preliminary injunction stage" with respect to the admissibility

---

[7] Lake Charles Diesel, Inc. v. Gen. Motors Corp., 328 F.3d 192, 195–96 (5th Cir. 2003) (citing Canal Auth. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974)).

[8] Miss. Power & Light Co. v. United Gas Pipe Line, Co., 760 F.2d 618, 621 (5th Cir. 1985).

[9] *Id.*

[10] State of Tex. v. Seatrain Int'l, S.A., 518 F.2d 175, 179 (5th Cir. 1975).

[11] Doc. 7-1 at 6 (quoting Fed. Sav. & Loan Ins. Corp. v. Dixon, 835 F.2d 554, 558 (5th Cir. 1987)).

of evidence and rules of procedure—not with respect to the plaintiff's burden in showing a substantial likelihood of prevailing on the merits.[12] Indeed, the Fifth Circuit requires that, for a court to award this extraordinary remedy, a plaintiff must "clearly carr[y] the burden of persuasion on all four . . . prerequisites."[13] A plaintiff, however, "is not required to prove to a moral certainty that his is the only correct position."[14]

> The prerequisite, as an absolute, is more negative than positive: one cannot obtain a preliminary injunction if he clearly will not prevail on the merits; however, that he is unable, in an abbreviated proceeding, to prove with certainty eventual success does not foreclose the possibility that temporary restraint may be appropriate.[15]

Applying the foregoing standards, the Court now considers whether Plaintiff has shown a substantial likelihood of success on the merits. "Medicaid is a cooperative federal-state program through which the federal government provides financial aid to states that furnish medical assistance to eligible low-income individuals."[16] "States electing to participate in the program must comply with certain requirements imposed by the Act and regulations of the Secretary of Health and Human Resources."[17] "To qualify for federal

---

[12] In this case, the Fifth Circuit considered whether the trial court "erred in relying upon affidavits that contained hearsay to order the preliminary injunction." *Fed. Sav. & Loan Ins. Corp.*, 835 F.2d at 559. The Court went on to uphold the district court's holding that the "traditional four-part test has been met," which included a finding that "there is a substantial likelihood that the plaintiff will prevail on the merits." *Id.*

[13] *Miss. Power & Light Co.*, 760 F.2d at 621.

[14] *Seatrain Int'l*, 518 F.2d at 180.

[15] *Id.* "[N]one of the four prerequisites has a fixed quantitative scale. Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Id.* (citing Siff v. State Democratic Exec. Comm., 500 F.2d 1307 (5th Cir. 1974)).

[16] S.D. *ex rel.* Dickson v. Hood, 391 F.3d 581, 585 (5th Cir. 2004) (citing 42 U.S.C. § 1396 *et seq.*; Atkins v. Rivera, 477 U.S. 154, 156 (1986); Louisiana v. U.S. Dep't of Health & Human Servs., 905 F.2d 877, 878 (5th Cir. 1990)).

[17] *Id.* (citing Evergreen Presbyterian Ministries, Inc. v. Hood, 235 F.3d 908, 915 (5th Cir. 2000)). Louisiana receives federal Medicaid funds and must comply with these requirements.

assistance, a State must submit to the Secretary and have approved a 'plan for medical assistance.'"[18] Under 42 U.S.C. § 1396a(a)(8), the State Plan must "provide that all individuals wishing to make application for medical assistance under the plan shall have an opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals."[19] Plaintiff alleges that the LDH has violated this statute by denying her assistance as an eligible individual.[20]

Plaintiff previously received assistance pursuant to 42 U.S.C. § 1396a(a)(10)(E)(iv). Under this section, applicants are deemed "Qualified Individuals" if they would otherwise be qualified Medicare beneficiaries "but for the fact that their income exceeds the income level established by the State under section 1396d(p)(2) of this title and is at least 120 percent, but less than 135 percent, of the official poverty line . . . for a family of the size involved."[21] This is part of a State's obligation to "assist certain low-income Medicare beneficiaries with payment of their out-of-pocket expenses related to the Medicare program."[22] The Medicaid Act does not, however, define the term "family of the size involved." States have historically been permitted to "apply their own reasonable definition of the phrase."[23]

---

[18] Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 502 (1990) (citing 42 U.S.C. § 1396a(a)).

[19] 42 U.S.C. § 1396a(a)(8). Louisiana has adopted a State Plan for medical assistance in accordance with the Act, which has been approved by the Secretary. To be sure, however, approval by the Secretary of Louisiana's State Plan does not result in any deference or presumptive reasonableness in this case. *See* State *ex. rel.* Dickson v. Hood, 391 F.3d 581, 599 (5th Cir. 2010) (rejecting a similar argument).

[20] Neither party disputes that 42 U.S.C. § 1396a(a)(8) creates an enforceable right under 42 U.S.C. § 1983.

[21] 42 U.S.C. § 1396a(a)(10)(E)(iv).

[22] Wheaton v. McCarthy, 800 F.3d 282, 284 (6th Cir. 2015) (citing 42 U.S.C. §§ 1396a(a)(10)(E) & 1396d(p)). Eligibility for this assistance turns on whether the applicant has income less or equal to certain percentages of the federal poverty line "for a family of the size involved." *Id.* (citing 42 U.S.C. §§ 1396(p)(2)(A) & 1396a(a)(10)(E)(iii), (iv)).

[23] 88 Fed. Reg. 35230, 35247 (Sept. 21, 2023).

The Louisiana Medicaid Eligibility Manual ("LMEM") "is used to determine eligibility for coverage in Louisiana Medicaid Programs."[24] In determining whether an applicant is a Qualified Individual according to the LMEM, Defendant asserts that the LDH follows the Supplemental Security Income (SSI) Eligibility methodology, which "includes the applicant and their spouse, if any" in determining the "family of the size involved."[25] The LDH does not, however, include children or grandchildren in determining the family size. Thus, the Court is tasked with reviewing the LDH's determination that a "family of the size involved" does not include a minor grandchild who lives with the applicant and who is dependent upon the applicant for financial support.

In the Fifth Circuit, "a district court is entitled to review the actions of a state agency administering federal Medicaid funding as it would review the actions of a federal agency."[26] In briefing, both parties refer to *Chevron* deference.[27] The Supreme Court and Fifth Circuit have, however, made clear that interpretations contained in agency manuals do not carry the force of law and do not warrant *Chevron* deference.[28] The LMEM therefore lacks the "power to control," and is only entitled to respect to the extent that it has the "power to persuade."[29]

Indeed, the LDH's interpretations of the Medicaid Act, including those contained in the LMEM, "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to

---

[24] *Medicaid*, Louisiana Department of Health, https://ldh.la.gov/page/medicaid-eligibility-manual (last visited Apr. 24, 2024).

[25] Doc. 15 at 5.

[26] Abbeville Gen. Hosp. v. Ramsey, 3 F.3d 797, 803 n.8 (quoting Miss. Hosp. Ass'n, Inc. v. Heckler, 701 F.2d 511, 516 (5th Cir. 1983)).

[27] Doc. 15 at 9; Doc. 18 at 8.

[28] La. Envtl. Action Network v. U.S. E.P.A., 382 F.3d 575, 583 (5th Cir. 2004) (citing Christensen v. Harris Cty., 529 U.S. 576, 587 (2000)).

[29] *Id.* (citing Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)). *See also State ex. rel. Dickson*, 391 F.3d at 590 n.6 (denying *Chevron* deference to a State Medicaid Manual).

6

which courts and litigants may properly resort for guidance."[30] And the Fifth Circuit has instructed that such interpretations are generally "entitled to respectful consideration in light of the agency's significant expertise, the technical complexity of the Medicaid program, and the exceptionally broad authority conferred upon the Secretary under the Act."[31] Nevertheless, the weight afforded to an agency interpretation still depends on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade."[32]

With respect to its application of the LMEM to Plaintiff's facts, Defendant avers that:

> The QI program monthly income limit is $1,641 for an individual or couple. Under Louisiana Medicaid Eligibility Manual H-2000, the income unit consists of the applicant/beneficiary and the applicant/beneficiary's spouse. Plaintiff is not married and does not have a spouse, and was thus considered a household of one. Therefore, Plaintiff was over the monthly income limit of $1,641 for a household of one.[33]

Indeed, the LMEM instructs that, to establish need as a Qualified Individual, the LDH first determines the "composition of the income unit," and then determines the "countable income" based on the income unit.[34] Then, the last step to determine eligibility is to compare the "countable income" to 135

---

[30] *Skidmore*, 323 U.S. at 140.

[31] *State ex. rel. Dickson*, 391 F.3d at 590 n.6 (internal citations omitted). While in *Dickson* the Fifth Circuit considered deference to the Centers for Medicare & Medicaid Services, the LDH has been delegated broad discretion "to adopt standards for determining the extent of medical assistance." *Id.* at 601 n.26 (quoting Beal v. Doe, 432 U.S. 438, 444 (1977)).

[32] *Skidmore*, 323 U.S. at 140.

[33] Doc. 15 at 3.

[34] LOUISIANA DEPARTMENT OF HEALTH, LOUISIANA MEDICAID ELIGIBILITY MANUAL ELIGIBILITY DETERMINATIONS: H-2000 QUALIFYING INDIVIDUALS PROGRAM 2–3, https://ldh.la.gov/assets/medicaid/MedicaidEligibilityPolicy/H-2000.pdf (June 30, 2023).

percent of the Federal Poverty Level (FPL) for one or two persons, depending on whether the applicant has an eligible spouse.[35] The LMEM, however, fails to expressly define a "family of the size involved" and only implicitly restricts a "family of the size involved" to include an applicant and an eligible spouse by instructing that the FPL may only be based on a household of one or two. The LMEM lacks any analysis or explanation of this limitation and therefore fails to satisfy the Court that the LDH's limitation of a "family of the size involved" was the result of thorough consideration or valid reasoning. The State Plan similarly lacks any articulable rationale for adopting this definition of the term.

In opposition to the instant Motion for Preliminary Injunction, Defendant offers analysis to support the LDH's implicit determination. Defendant asserts that the LDH has properly used the Supplemental Security Income methodology to determine Plaintiff's family size. Defendant points to 42 U.S.C. § 1396d(p)(1)(B), which defines the term "qualified medicare beneficiary" as those individuals "whose income (as determined under section 1382a of this title for purposes of the supplemental security income program . . . does not exceed an income level established by the State . . . ."[36] Similarly, the Louisiana Administrative Code provides that "Medicaid utilizes the income and asset methodologies of the Supplemental Security Income (SSI) Program to determine Medicaid eligibility for aged, blind and disabled individuals."[37] Defendant therefore avers that the SSI Eligibility methodology only includes

---

[35] *Id.*

[36] Section 1382a provides, in pertinent part, that "income means both earned income and unearned income." Unearned income is defined to include, among other things, "support and maintenance furnished in cash or kind; except that (i) in the case of any individual (and his eligible spouse, if any) living in another person's household and receiving support and maintenance in kind from such person" shall be reduced by 33 1/3 percent. 42 U.S.C. § 1382a(a)(2)(A).

[37] LA. ADMIN. CODE tit. 50, § III-10703.

an applicant and their spouse, and therefore, the LDH's conclusion that the "family of the size involved" only includes an applicant and their eligible spouse is supported by law.

This rationale, however, conflates the calculation of an individual's income with determination of their family size for purposes of determining the applicable Federal Poverty Level. Notably, § 1396d(p)(1)(B) only requires states to determine *income* by use of the SSI Eligibility methodology. The inquiry into family size for purposes of determining the Federal Poverty Level is entirely separate and irrelevant to the mandate of § 1396d.[38] The LDH fails to otherwise provide any reasonable explanation for its implicit determination. Thus, it is unclear to this Court whether the LDH's interpretation of "family of the size involved" resulted from a legally incorrect interpretation of § 1396d; a thorough, deliberative process based upon the LDH's significant expertise in administering the Medicaid program; or mere oversight. Accordingly, the Court finds the LMEM and State Plan without power to persuade and therefore without power to control.

When faced with undefined statutory terms, courts must first look to a term's ordinary meaning.[39] A family may be defined as "a group of individuals living under one roof and usually under one head[;]" "a group of persons of common ancestry[;]" or "a group of people united by certain convictions or a common affiliation."[40] While it may also be defined as "the basic unit in society

---

[38] Additionally, the Federal Poverty Income Guidelines found within the LMEM provide for a family size of up to eight. *See generally* LOUISIANA DEPARTMENT OF HEALTH, LOUISIANA MEDICAID ELIGIBILITY MANUAL: Z-200 FEDERAL POVERTY INCOME GUIDELINES, http://new.dhh.louisiana.gov/assets/medicaid/MedicaidEligibilityPolicy/Z-200m.pdf (Feb. 21, 2024).

[39] United States v. Moore, 71 F.4th 392, 395 (5th Cir. 2023) (citing Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 251 (2010)).

[40] *Family*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/family (Apr. 22, 2024). Black's Law Dictionary offers similar definitions of the term "family."

*traditionally* consisting of two parents rearing children,"[41] the statute's reference to the Federal Poverty Level, which considers each "person in a family/household" makes clear that the *ordinary* meaning of the word is not the "traditional" meaning. [42] The ordinary meaning of "family" would therefore include those living under one roof and usually under one head, such as a child or grandchild that lives with an applicant and is wholly dependent on that applicant for financial support. Accordingly, the Court finds the LDH's interpretation of "family of the size involved" to be unreasonable. Because the term "family" as applied in this case is clear, Plaintiff has carried her burden in demonstrating a substantial likelihood of success on the merits.

Lastly, Defendant argues that it is not required to adopt a definition of "family of the size involved" until April 1, 2026.[43] As Defendant notes, "CMS has historically permitted States to apply their own *reasonable* definition of this phrase."[44] Defendant, however, presupposes that its current definition of the term is reasonable. The Court concluded *supra* that it is not. Though the recently promulgated regulation does not impose a duty on States to adopt a definition until 2026, the Court is not thereby relieved of its duty "to review the actions of a state agency administering federal Medicaid funding as it

---

[41] *Id.* (emphasis added).

[42] *See HHS Poverty Guidelines for 2024*, OFFICE OF THE ASSISTANT SECRETARY FOR PLANNING AND EVALUATION, https://aspe.hhs.gov/topics/poverty-economic-mobility/poverty-guidelines (Jan. 17, 2024).

[43] 88 Fed. Reg. 35230, 35248 (Sept. 21, 2023). Indeed, the CMS has proposed that "family of the size involved" "be defined to include at least the individuals included in the definition of 'family size' in the [Low-Income Subsidy Program]. Under § 423.772, . . . 'family size' is defined to include the applicant, the applicant's spouse (if the spouse is living in the same household with the applicant), and all other individuals living in the same household who are related to the applicant and dependent on the applicant or applicant's spouse for one-half of their financial support." *Id.* at 35247. Under this rule, "States would retain flexibility to include other individuals who are not described in § 423.772. Additionally, this proposal would not affect the States' ability to adopt a different reasonable definition of the phrase for purposes of other eligibility groups." *Id.*

[44] *Id.* at 35247 (emphasis added).

would review the actions of a federal agency."[45] Accordingly, Defendant's argument fails.

### 2. *Irreparable Injury*

Plaintiff argues that she faces irreparable injury if the Court does not grant her Motion for Preliminary Injunction because she "will experience financial hardship or lack of health care if Medicaid payment of her Medicare Part B premiums is discontinued."[46] "An injury is 'irreparable' only if it cannot be undone through monetary remedies."[47] "Numerous courts have found that reductions in retiree health insurance coverage constitute irreparable harm."[48] Plaintiff is a retired widow, has a medical condition, has limited sources of income, and is the sole provider for her granddaughter. While Plaintiff retains health insurance after the LDH stopped paying her Medicare Part B premiums, based upon her declarations, Plaintiff may not be able to continue paying for coverage until a judgment would be rendered in this lawsuit.[49] Thus, the Court finds that Plaintiff—to the extent she has not already—"would likely suffer emotional distress, concern about potential financial disaster, and

---

[45] Abbeville Gen. Hosp. v. Ramsey, 3 F.3d 797, 803 n.8 (quoting Miss. Hosp. Ass'n, Inc. v. Heckler, 701 F.2d 511, 516 (5th Cir. 1983)).

[46] Doc. 7-1 at 16.

[47] Deerfield Med. Ctr. v. City of Deerfield Beach, 661 F.2d 328, 338 (5th Cir. 1981) (citing Spiegel v. City of Houston, 636 F.2d 997 (5th Cir. 1981); Parker v. Dunlop, 517 F.2d 785, 787 (5th Cir. 1975)).

[48] Helwig v. Kelsey-Hayes Co., 857 F. Supp. 1168, 1180 (E.D. Mich. 1994) (citing United Steelworkers of Am. v. Textron, Inc., 836 F.2d 6 (1st Cir. 1987); Golden v. Kelsey-Hayes Co., 845 F. Supp. 410 (E.D. Mich. 1994); Schalk v. Teledyne, Inc., 751 F. Supp. 1261 (W.D. Mich. 1990), *aff'd* 948 F.2d 1290 (6th Cir. 1991); Mamula v. Satralloy, Inc., 578 F. Supp. 563 (S.D. Ohio 1983)).

[49] *See* Doc. 18-1; Doc. 7-2 ("Our monthly expenses significantly exceed our monthly income."). *Cf.* Nichols v. Alcatel USA, Inc., 532 F.3d 364, 378 (5th Cir. 2008) (finding that the plaintiffs did not carry their burden in proving irreparable harm where "no evidence was offered that suggests [the] retirees could not continue their current coverage until a judgment was rendered in [the] lawsuit").

possibly deprivation of life's necessities (in order to keep up in insurance payments)."[50]

Plaintiff also argues that any injury is irreparable because "the Eleventh Amendment prohibits a federal court from requiring the state to pay retroactive money damages."[51] Indeed, the Eleventh Amendment bars retroactive payment of benefits wrongfully withheld by the state.[52] Plaintiff's lost Medicare Part B premium payments therefore cannot be later reimbursed. Accordingly, this Court finds that, absent a preliminary injunction, Plaintiff's injuries are irreparable.

### 3. *Threatened Injury to Plaintiff Outweighs Threatened Harm*

Next, the Court finds that Plaintiff has carried her burden in demonstrating that her threatened injury outweighs the threatened harm to the LDH. The Fifth Circuit has recognized that "[s]tate budgetary considerations do not . . . in social welfare cases, constitute a critical public interest that would be injured by the grant of preliminary relief."[53] And "[i]n contrast, there is a robust public interest in safeguarding access to health care for those eligible for Medicaid, whom Congress has recognized as 'the most needy in the country.'"[54] Accordingly, the Court finds that the threatened harm to Plaintiff outweighs any fiscal harm that the State may experience.

---

[50] *United Steelworkers of Am.*, 836 F.2d at 8. Effective April 1, 2024, Plaintiff also lost the $450 benefit from the Kinship Care Subsidy Program ("KSCP"), exacerbating the likelihood and extent of irreparable harm suffered. Plaintiff states that "[t]he loss of both KCSP and Medicaid has been a huge blow for us since our expenses already exceeded our income. [She] is nearing the limits on [her] credit cards. [The family's] financial situation is not sustainable." *See* Doc. 18-1.

[51] Doc. 7-1 at 20.

[52] *See* Edelman v. Jordan, 415 U.S. 651, 668–72 (1974).

[53] Planned Parenthood of Gulf Coast, Inc. v. Gee, 862 F.3d 445, 471 (5th Cir. 2017) (quoting Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly, 572 F.3d 644, 659 (9th Cir. 2009), *vacated and remanded on other grounds*, 132 S. Ct. 1204 (2012)).

[54] *Id.* (quoting *Indep. Living Ctr. of S. Cal.*, 572 F.3d at 659).

4. ***No Disservice of Public Interest***

Because the LDH's interpretation of "family of the size involved" likely violates federal law, there is no legitimate public interest in allowing LDH to continue refusing to pay for Plaintiff's Medicare Part B premiums.[55] The public interest weighs in favor of "safeguarding access to health care for those eligible under Medicaid."[56] The Court therefore finds that granting the preliminary injunction will not disserve the public interest. All requirements for issuance of a preliminary injunction have been met.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction is **GRANTED**. **IT IS ORDERED** that Defendant maintain the status quo in payment of Plaintiff's monthly Medicare Part B premiums pending final disposition of this matter or further order of the Court. **IT IS FURTHER ORDERED** that this preliminary injunction is issued without posting of bond.

New Orleans, Louisiana this 30th day of April, 2024.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[55] *Id.* at 472.
[56] *Id.* at 471 (quoting *Indep. Living Ctr. of S. Cal.*, 572 F.3d at 659).